UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KIMBERLY A BARLET,

    Plaintiff,

v.                                          Case No.:  6:23-cv-1778-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____

## OPINION AND ORDER

Plaintiff Kimberly A. Barlet seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA"), finding she was no longer disabled since March 9, 2018. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. Plaintiff also filed a reply. As explained below, the decision of the Commissioner is **REVERSED and REMANDED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.   Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A.   Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B.    Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo

standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

Generally, an ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. Yet when the issue is cessation of disability benefits, then the ALJ must follow an eight-step evaluation for a Title II claim and a seven-step process for a Title XVI claim to determine whether a plaintiff's disability benefits should continue. *See* 42 U.S.C. § 423(f); 20 C.F.R. §§ 404.1594(f), 416.994(b). Here, the ALJ followed an eight-step evaluation and the Court adopts the explanation of each step as set forth in the decision. (Tr. 2058-59).

### C.   Procedural History

On September 7, 2007, Plaintiff was found disabled beginning on June 1, 2004. (Tr. 2058). On March 9, 2018, SSA determined that Plaintiff's health had improved since the last review of her case and she was no longer disabled as of that date. (Tr. 59, 83, 90-95). After a disability hearing by a State agency Disability Hearing Officer, the determination was upheld on reconsideration. (Tr. 83, 2058).

Plaintiff requested a hearing, and on April 8, 2020, a hearing were held before Administrative Law Judge Charlie Johnson. (Tr. 37-58). On May 8, 2020, ALJ Johnson entered a decision finding Plaintiff's disability ended on May 1, 2018, and she had not become disabled again since that date. (Tr. 15-26). On November 10, 2020, the Appeals Council denied Plaintiff's request for review. (Tr. 1-5). Plaintiff appealed that decision to the District Court, and on July 7, 2021, the District Court reversed the decision and remanded the action to the Commissioner for further proceedings, based on an Unopposed Motion for Entry of Judgment with Remand. (Tr. 2121-22).

Due to the District Court's remand, the Appeals Council vacated the prior final decision of the Commissioner and remanded the action to the ALJ. On remand, the ALJ was to: "[g]ive further consideration to whether medical improvement occurred, including an explanation comparing the prior medical evidence that supports the most recent favorable decision to the current medical evidence in the record, and providing citations to the record." (Tr. 2127-28).

On November 18, 2022, the ALJ held a hearing. (Tr. 2091-2120). On December 16, 2022, the ALJ entered a decision finding Plaintiff's disability ended on March 1, 2018, and she had not become disabled again since that date. (Tr. 2058-74). On July 22, 2023, the Appeals Council found no reason under its rules to assume jurisdiction. (Tr. 2049-53). Plaintiff initiated the instant action by Complaint (Doc.

1) filed on September 14, 2023, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 13).

### D.   Summary of ALJ's Decision

In this case, the ALJ found the most recent favorable medical decision finding Plaintiff was disabled was the decision dated September 7, 2007. (Tr. 2060). The ALJ determined that this decision is known as the "'comparison point decision' or CPD." (Tr. 2060). At the time of the CPD, the ALJ found Plaintiff to have the following medically determinable impairments: affective disorder and anxiety. (Tr. 2060). "These impairments were found to result in the residual functional capacity that precluded her from completing a 40-hour workweek." (Tr. 2060).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity through the date of the decision. (Tr. 2060). At step two, the ALJ found that since March 1, 2018, Plaintiff has had the following medically determinable impairments: "anxiety, depression, posttraumatic stress disorder (PTSD), history of traumatic brain injury (TBI), personality disorder, lumbar spine degenerative disc disease, seizure disorder, and history of right shoulder disorder. These are the claimant's current impairments." (Tr. 2060). Since March 1, 2018, the ALJ found at step three that Plaintiff had not had an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20

C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1525, 404.1526). (Tr. 2060). The ALJ further found that medical improvement occurred on March 1, 2018. (Tr. 2063).

At step four, the ALJ found that the medical improvement was related to the ability to work because it resulted in an increase in Plaintiff's residual functional capacity. (Tr. 2063). At step six, the ALJ determined that since March 1, 2018, Plaintiff continued to have a severe impairment or combination of severe impairments. (Tr. 2063).

At step seven, the ALJ found that since March 1, 2018, Plaintiff has had the following residual functional capacity ("RFC"):

> Based on the impairments present since March 1, 2018, the claimant has had the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except can stand and/or walk for six hours out of an eight-hour workday and can sit for six hours out of an eight-hour workday. She can frequently climb ramps and stairs but never climb ladders, ropes, and scaffolds. The claimant can frequently balance on level surfaces and occasionally balance on uneven terrain. She can occasionally stoop and frequently kneel, crouch, and crawl. The claimant can occasionally reach overhead with the right upper extremity. She can tolerate no exposure to vibration or hazards such as unprotected heights or moving mechanical parts. The claimant can understand, remember, and carry out simple instructions. She can concentrate and persist to complete simple and routine tasks. The claimant can tolerate occasional interaction with supervisors, coworkers, and the public. She can adjust to gradual changes in a routine work setting.

(Tr. 2064).

At step eight, the ALJ determined that since March 1, 2018, Plaintiff has been unable to perform her past relevant work as an animal caretaker and animal enforcement officer. (Tr. 2072). The ALJ found that after considering Plaintiff's age (39 on March 1, 2018), education (at least high school), work experience, and RFC, and based on the impairments present since March 1, 2018, Plaintiff had been able to perform a significant number of jobs in the national economy. (Tr. 2072). Specifically, the vocational expert testified that a person with Plaintiff's limitations could perform such occupations as:

(1)   Photocopy machine operator, DOT 207.685-014,[1] light, SVP 2

(2)   Mail clerk, DOT 209.687-026, light, SVP 2

(3)   General office helper, DOT 239.567-010. light SVP 2

(Tr. 2073). The ALJ concluded that Plaintiff's disability ended on March 1, 2018, and she had not become disabled again since that date. (Tr. 2073).

## II.   Analysis

On appeal, Plaintiff raises the issue of whether the ALJ properly weighed the medical opinions of record based on an adequate rationale and substantial evidence. (Do. 21, p. 19). Plaintiff argues that the ALJ did not provide sufficient reasons supported by substantial evidence to afford little weight to Jeffrey M. Williamson, Ph.D.'s opinions. (Doc. 21, p. 20). The Commissioner argues that contrary to

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

Plaintiff's arguments, the ALJ properly afforded little weight to Dr. Williamson's opinions because they were inconsistent with and unsupported by the medical evidence of record. (Doc. 22, p. 9).

For disability cases filed before March 27, 2017[2] – such as this one – at step four, an ALJ must properly consider treating physicians, examining physicians, non-examining physician, and other source opinions, and weigh these opinions and findings as an integral part of the ALJ's RFC determination. *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012). Whenever a physician offers an opinion about the nature and severity of a claimant's impairments—including the claimant's symptoms, diagnosis, and prognosis; physical and mental restrictions; or what the claimant can still do—the ALJ must state with particularity the weight given to the opinion and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such an explanation, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart*, 662 F.2d at 735).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d

---

[2] For disability cases filed after March 27, 2017, new regulations apply and the ALJ no longer defers or gives any specific evidentiary weight to a medical opinion. *See*  20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a).

1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* "The ALJ is to consider a number of factors in determining how much weight to give to each medical opinion:   (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's 'opinion is with the record as a whole'; and (5) the doctor's specialization." *Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).

Even though examining or non-examining doctors' opinions are not entitled to deference, an ALJ is still required to consider every medical opinion. *Bennett v. Astrue*, No. 308-CV-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). "The ALJ is to consider a number of factors in determining how much weight to give to each medical opinion: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's 'opinion

is with the record as a whole'; and (5) the doctor's specialization." *Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).

Dr. Williamson evaluated Plaintiff on March 8, 2019; March 27, 2019; April 3, 2019; and June 1, 2019 (review of records) and completed a Psychological Evaluation on June 25, 2019. (Tr. 1704). On November 13, 2020, Dr. Williamson completed a form that addressed the prior ALJ's May 2020 unfavorable decision as it related to Dr. Williamson's opinion. (Tr. 2266-67). Finally, Dr. Williamson completed a Medical Opinions Re: Ability To Do Work-Related Activities (Mental) form on November 30, 2020. (Tr. 2278).

### A.   Dr. Williamson's June 25, 2019 Psychological Evaluation

For the June 2019 psychological evaluation, Dr. Williamson administered these tests and reviewed these records: clinical interview with Plaintiff, Minnesota Multiphasic Personality Inventory – 2nd Edition ("MMPI-2"), Vineland Domain – Level Parent/Caregiver Form – 3rd Edition (completed by Plaintiff's mother), Review of Records, Hamilton Rating Scale for Depression, and Cohen-Mansfield Agitation Inventory ("CMAI"). (Tr. 1707).

On observation, Dr. Williamson found Plaintiff alert, oriented times three, and cooperative. (Tr. 1707). Her spontaneous speech was fluent, coherent, responsive, and organized, but she often engaged in tangential off-task verbalizations. (Tr.

1707). She frequently spoke of frustrations and self-talk, was anxious, and self-derogatory. (Tr. 1707). He found she had a tendency to give up on hard tasks, had considerable inattentiveness, distractibility, and a need for monitoring and redirection. (Tr. 1707). She appeared to have difficulty with internalized directive or conceptual sets. (Tr. 1707). Her psychomotor behavior was within normal limits, but her overall speed of performance was slow despite instructions for performance speed. (Tr. 1707).

Dr. Williamson found that the results from the MMPI-2 were invalid. (Tr. 1708). He determined that Plaintiff appeared to exaggerate the degree of psychopathology she was experiencing, presented a rather mixed and confused clinical picture "in which a large number of infrequently endorsed, extreme and likely unrelated symptoms are endorsed. Will for exaggeration or malingering is suggested by confusion and reading problems or severe psychopathology and a 'cry for help' are also to be considered." (Tr. 1708). With other testing, Dr. Williamson found Plaintiff revealed moderate sadness, helplessness, guilt, irritability and increased sleeping. (Tr. 1708). Plaintiff reported mild hopelessness and self-cutting, agitation, restlessness, cursing, or verbal aggression several time a week, and hitting self or destroying property once a week. (Tr. 1708). Dr. Williamson diagnosed Plaintiff with Major Neurocognitive Disorder due to Traumatic Brain Injury, Post-Traumatic Stress Disorder ("PTSD"), Personality Disorder NOS with Borderline,

Schizoid and Dependent Traits – by history, and Traumatic Brain Injury, Diabetes Insipidus, Anosmia, Tinnitus, Seizure Disorder, and Hyperlipidemia. (Tr. 1708).

Dr. Williamson concluded that Plaintiff suffered from childhood abuse, and PTSD from a sexual assault while serving in the military, which included intrusive recollections and memories, emotional numbing, anxious avoidance, as well as hypervigilance to threat, helplessness, and hopelessness that included suicidal ideation, suicidal attempts, and self-cutting. (Tr. 1708-1709). Dr. Williamson noted that Plaintiff was given a 100% disability rating from the Veterans Administration as a result of service-connected trauma. (Tr. 1709).

From a December 2012 car accident, Plaintiff experienced a Traumatic Brain Injury, from which Dr. Williamson found that it had, among other things:

> significantly affected new learning and recall, historical memory, sustained task performance as well as concept formation and maintenance. Premorbid psychological issues such as emotional lability, persistent dysphoric, irritable and anxious moods as well as further loss of impulse control are noted. Aggressive verbal outbursts, agitation, anhedonia and social avoidance are indicated. Sleep problems (i.e., sleeping too much), being argumentative and having difficulties accommodating her behavior to social demands are noted. Adaptive living testing is at the borderline level of functioning and significantly below intelligence estimates. Ms. Barlet has significant problems with socialization, adaptive living skills and functional communication. Problem-solving is often rigid and perseverative. She has poor frustration tolerance, evidences poor social judgment and anticipation of consequences.

(Tr. 1709).

Dr. Williamson found Plaintiff's deficits prevent her from maintaining task performance and appropriate social interactions in a competitive work environment. (Tr. 1709). He also found she would have difficulties concentrating, completing tasks, considerable distractibility, poor problem-solving, poor initiative, and poor goal-setting, poor planning, and poor execution. (Tr. 1709). Dr. Williamson found Plaintiff could only remember and complete simple two-step directions, would have difficulties comprehending and remembering complex information, and required monitoring and redirection based on memory problems that prevented new learning and skill development. (Tr. 1709). He found she could stay on task for ten to fifteen minutes before external distractions, frustration, or losing internalized direction caused her to be off-task. (Tr. 1709). She needed to avoid stress, would have difficulties hearing criticism, and would have difficulties adapting to change or transitions. (Tr. 1709). Lastly, Dr. Williamson found Plaintiff combative, argumentative, and disinhibited in social interaction, with poor social judgment. (Tr. 1709). He further found she depended on others for schedules, maintaining medical appointments, managing medication, and could not manage her own finances. (Tr. 1709-10). He concluded: "[t]his examiner does not believe that Ms. Barlet can maintain the attendance, consistency of work product, adequacy of emotional regulation, socialization skills or new learning and recall to allow her to successfully engage in competitive employment." (Tr. 1710).

**B.      Dr. Williamson's November 13, 2020 Responses**

Dr. Williamson provided handwritten responses to questions about the prior May 2020 decision. (Tr. 2266-67). Based on the handwriting, the responses are not fully legible. (Tr. 2266-67). As best as can be discerned from the handwriting, Dr. Williamson stated that the testing done was recognized, excellent, reliable, and valid. (Tr. 2266). He criticized the ALJ's statement that "[a]ll information other than the behavioral observations and performance on neurocognitive tests is directly or indirectly self or other report." (Tr. 2266). He found, "[t]hese opinions reflect complete ignorance of the nature of psychiatric or psychological treatment or evaluation." (Tr. 2266). Dr. Williamson noted that Giles D. Rainwater, Ph.D. evaluated Plaintiff on two occasions, performing neuropsychological testing. (Tr. 2267). From the first testing, Dr. Rainwater found Plaintiff had severe deficits with memory, attention, processing speed, and visual memory. (Tr. 2267). Dr. Williamson noted that on Dr. Rainwater's second testing, Plaintiff memory remained impaired. (Tr. 2267).

**C.      Dr. Williamson's November 30, 2020 Medical Opinion**

For the period of June 1, 2018, through November 30, 2020, Dr. Williamson reviewed medical records from June 2013 through September 2018. (Tr. 2277). He found Plaintiff seriously limited in her mental abilities and attitudes needed to do unskilled work, such as remembering work procedures, maintaining attention for

two-hour segments, maintaining regular attendance, sustaining an ordinary routine without special supervision, working in coordination with others, completing a normal workday and workweek without interruption from psychologically based symptoms, performing consistent pace, accepting instructions, responding to criticism appropriately, getting along with co-workers, and dealing with normal work stress. (Tr. 2277). He found Plaintiff was unable to meet competitive standards or was seriously limited in understanding and remembering detailed instructions, carrying out detailed instructions, setting realistic goals, and dealing with stress at work. (Tr. 2278). He also found she was seriously limited in interacting appropriately with the general public and maintaining appropriate social behavior. (Tr. 2278). He further found she would miss more than four days of work per month due to her impairments or treatment. (Tr. 2278).

### D.   ALJ's Findings on Dr. Williamson's Opinions

As to the June 2019 evaluation, the ALJ briefly summarized Dr. Williamson's findings. (Tr. 2069). The ALJ gave this opinion little weight:

> because it is overstated and not consistent with the overall record. More specifically, his opinion is not supported by the claimant treatment records which consistently show normal mental status exams. In determining her adaptive living function and personality testing, Dr. Williamson administered subjective composite tests, but no objective testing or mental status examination findings were reported. In addition, his opinion was not consistent with the overall record, which shows the claimant lives alone, is independent in her activities of daily living, cares for her pets, had generally normal mental status findings and had limited and/or intermittent mental

health treatment during the relevant period (Exs. 10F/7; 16F/3; 27F; 28F; 32F; 31F; 33F; 34F; 36F; 41F; 49F; 52F).

(Tr. 2069-70).

For the November 2020 evaluation, the ALJ summarized Dr. Williamson's

findings. (Tr. 2070). The ALJ then afforded Dr. Williamson's opinion little weight:

> Dr. Williamson noted that the tests he performed have excellent reliability and validity, but he did not deny that they were subjective composite tests and not objective evidence. He indicated that mental status exams are performed at a single point in time, but they are considered valid objective evidence under Social Security guidelines. In this case, there are numerous mental status exams over the course of a period of time and therefore provides a picture of the claimant's current level of functioning. He noted that Dr. Rainwater evaluated the claimant and noted significant deficits with memory, attention, processing speed and visual spatial memory and construction, but the testing by Dr. Rainwater was shortly after the claimant's traumatic brain injury and before medical improvement. Accordingly, the undersigned gives this opinion little weight because it is overstated and not consistent with the overall record. In addition, his opinion was not consistent with the record, which shows the claimant lives alone, is independent in her activities of daily living, cares for her pets, had generally normal mental status findings and had limited and/or intermittent mental health treatment during the relevant period (Exs. 10F/7; 16F/3; 27F; 28F; 32F; 31F; 33F; 34F; 36F; 41F; 49F; 52F).

 (Tr. 2070).

Central to the ALJ affording little weight to Dr. Williamson's opinion was his

finding that these opinions were overstated and inconsistent with the overall record,

"which consistently show[ed] normal mental status exams." (Tr. 2069-2070). In

support, the ALJ cited many medical records. (Tr. 2069-70 (citing "Exs. 10F/7;

16F/3; 27F; 28F; 32F; 31F; 33F; 34F; 36F; 41F; 49F; 52F"). Two problems exist with this finding. First, the Eleventh Circuit found that many mental disorders have fluctuations, meaning that an individual will have "good days or possibly good months" as well as bad. *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1106 (11th Cir. 2021). Thus, the ALJ's finding of consistently normal mental-status exams may not be sufficient. Further, even though some mental-status examinations are better than others, "[i]t is not enough merely to point to positive or neutral observations that create, at most, a trivial and indirect tension with" Dr. Williamsons' opinions. *See Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1263 (11th Cir. 2019).

Second, the medical records cited mainly do not support the ALJ's findings. For example, the ALJ cited six medical records from 2013 to 2014, many years before the date of improvement of March 1, 2018. (Tr. 2069-70 (citing Tr. 921, 1689-94, 1711-12, 1713-17, 1718-27, 1728-33)). Not only were these medical records not relevant to the time period at issue, but many if not all of these medical records stem from a time when Plaintiff resided in an in-patient rehabilitation program to recover from a motor vehicle accident that caused physical and mental problems. (Tr. 921, 1689-94, 1711-12, 1713-17, 1718-24). Thus, she was in a very controlled environment. Even so, the medical records show: (1) a minimal mental status exam of being oriented and alert, (Tr. 921); (2) receiving many types of service, such as

occupational, physical, and speech therapy, (Tr. 1689-94); (3) having an incident where she threw pills and hit a wall with her fist, (Tr. 1712); (4) taking an overdose of Klonopin to quiet her thoughts of experiencing a past trauma, (Tr. 1713-1725); (5) following up regarding the overdose, (Tr. 1724); and (6) noting that Plaintiff made moderate progress while in the treatment program,(Tr. 1728-33). None of these medical records show Dr. Williamson's opinions were overstated or inconsistent with the record as a whole.

The ALJ also cited five medical records from the relevant time period, but again these records do not support a finding that Dr. Williamson's opinions were overstated or inconsistent with the other medical evidence of record. For example:

- On June 13, 2018, Plaintiff saw a vocational rehab specialist. (Tr. 1171, 16F). Even though Plaintiff lived in her own home and took care of pets, the vocational rehab specialist found Plaintiff unable to obtain suitable and appropriate substantial gainful activity due to her breakthrough seizures, and her inability to focus on tasks, stay on task, learn and retain information quickly, follow through on tasks without cues, as well as her irritability, and fatigue. (Tr. 1172, 16F/3-4).

- On September 12, 2018, Noemi Rincon-Flores, M.D. with neurology service conducted a minimal neurological exam, finding Plaintiff alert, oriented x 4, speech fluent and able to follow commands. (Tr. 1739-47, 1744, 36F). Dr. Rincon-Flores noted Plaintiff was seizure free since May 2018, and discussed her medication regimen to avoid future seizures. (Tr. 1747).

- On December 14, 2018, Plaintiff saw a psychiatrist, Martin Maloney, DO. (Tr. 1695-1701, 28F). Plaintiff's mental status exam was generally normal, but her judgment and insight were fair. (Tr. 1699).

- On January 7, 2019, Plaintiff saw a physician assistant for symptoms of a urinary tract infection. (Tr. 1866-72, 49F). The mental status exam was minimal, with Plaintiff being oriented, with a normal mood and affect. (Tr. 1867).

- On June 4, 2021, Plaintiff went to the emergency department with reports of feeling high and lightheaded. (Tr. 2232-35, 52F). The doctor conducted a minimal psychological exam, finding Plaintiff calm, with normal affect, and no suicidal or homicidal ideations. (Tr. 2233).

Except for Dr. Maloney's exam, the medical providers from most of these visits conducted minimal mental status exams, focusing instead on the medical problem at hand – such as a urinary tract infection, preventing seizures, and lightheadedness. These records do not support a finding that Dr. Williamson's opinions are overstated and inconsistent with other medical records. As a result, substantial evidence does not support affording Dr. Williamson's opinions little weight. For this reason alone, remand is warranted.

Continuing on, another reason the ALJ discounted Dr. Williamson's opinions was that Plaintiff managed to live independently, be independent in daily activities, and care for her pets. (Tr. 2070). Feeding, clothing, purchasing basic necessities, and taking care of pets are not inconsistent with a person who has a severe mental impairment. *See Simon v. Comm'r, Soc. Sec. Admin*., 7 F.4th 1094, 1108 (11th Cir. 2021) ("[I]t goes almost without saying that many people living with severe mental illness are still capable of eating, putting on clothes in the morning, and purchasing basic necessities."). Further, being capable of doing these activities on your own

schedule without stress or pressure does not translate to functioning on a daily basis in a work environment. *See id.* Thus, functioning on a daily basis is insufficient to discredit Dr. Williamson's opinions.

For these reasons, substantial evidence does not support the ALJ's finding that Dr. Williamson's opinions were entitled to little weight. Dr. Williamson evaluated Plaintiff over several days, reviewed past medical records, performed testing that he determined had excellent reliability and validity, and determined Plaintiff's mental impairments and limitations. (Tr. 1704-10, 2266-67, 2277-78). Thus, remand is warranted to reevaluate Dr. Williamson's opinions.

## III.   Conclusion

For the reasons discussed above, the decision of the Commissioner is **REVERSED and REMANDED** such that this action is remanded under sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider Dr. Williamson's evaluations as well as the other medical evidence of record. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate any motions and deadlines, and afterward close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on July 12, 2024.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties